**BRK BRANDS, INC. and Gary J. Morris, Plaintiffs,**

**v.**

**NEST LABS, INC., Defendant.**

**No. 13 C 7900**

United States District Court, N.D. Illinois, Eastern Division.

Signed March 19, 2014

766

Sanjay K. Murthy, Benjamin E. Weed,
Devon Curtis Beane, Sanjay K. Murthy, K
& L Gates LLP, Chicago, IL, Bryan J.
Sinclair, K & L Gates LLP, Palo Alto, CA,
Ravinder Singh Deol, K & L Gates LLP,

Dallas, TX, Lynn J. Alstadt, Craig Geoffrey Cochenour, Buchanan, Ingersoll & Rooney, PC, Pittsburgh, PA, for Plaintiffs.

Marcus Edward Sernel, David Rokach, Louis Anding Klapp, III, Reid P. Huefner, Kirkland & Ellis LLP, Chicago, IL, Gregory S. Arovas, Kirkland & Ellis, LLP, New York, NY, for Defendant.

## ORDER OF MARCH 19, 2014

RICHARD A. POSNER, United States Circuit Judge

This is a suit for patent infringement, filed in the Northern District of Illinois this past November by BRK Brands against Nest Labs and transferred to me from Judge Kendall. Before me are two motions. One is by Nest and asks me to dismiss the suit for lack of standing or, alternatively, to dismiss the part of the complaint that alleges induced infringement. The other motion is by BRK and seeks a preliminary injunction.

BRK alleges that Nest has infringed six patents, but the motions concern only five: U.S. 6,144,310, 6,323,780, 6,600,424, 6,784,798, and 7,158,040. All five were issued to Gary J. Morris rather than to BRK and four are for an "environmental condition detector." The exception is the '780 patent, which is for a "communicative environmental alarm system." These terms (the first more clearly) denote an alarm (we'll call it the "Morris alarm") that detects and warns of hazardous conditions in a home (or office, but I'll ignore that variant for the sake of simplicity), such as smoke, carbon monoxide, and natural gas.

A Morris alarm not only makes a warning sound if it detects a hazardous condition, but also communicates via wireless channels with all the other Morris alarms in the house, each of which then emits a verbal warning indicating the location (by room), as well as the nature, of the hazard detected. The ability to convey a warning, in words (and not just by a sound), and to transmit the verbal warning from the alarm that generates it to another alarm, elsewhere on the premises, are the advances that the Morris patents claim over prior alarm systems. Nest's product, which went on sale this past November, also offers voice alerts, but unlike the Morris alarm connects to the internet, enabling it to communicate location and hazard information not only to other Nest alarms in the house but also to a smart phone and hence to wherever the phone's owner happens to be.

Gary Morris, being a professor rather than a businessman and thus unable to produce in quantity and market the alarm that he had invented, issued a license to BRK to do these things, and BRK has been producing and marketing the Morris alarms since the early 2000s and claims to have sold millions of them. At first the license, though exclusive, was limited to products designed for residential installations. But on the day this lawsuit was filed, Morris licensed the nonresidential market exclusively to BRK as well. That left very little for Morris to license to someone in the future (maybe the owner of a school-bus service). Morris retains a right to receive royalties from BRK, and to sue to enforce the patent if BRK declines to do so. But the licensing agreement denies him any right to control or even influence the present suit, filed by BRK. He has ceded to BRK the exclusive right to litigate the suit, including the right to settle the suit on any terms that BRK deems appropriate.

Nest argues that notwithstanding the licenses, which appear to make BRK essentially the exclusive licensee of the Morris patents, Morris remains the owner of those patents and therefore under Federal Circuit precedents BRK can't sue on its

own for infringement. BRK disagrees; it argues that Morris has transferred so many of his rights to it as to make it the de facto owner of the patents. Nest denies this but acknowledges that provided that Morris is joined as a co-plaintiff, the suit can, under those precedents, proceed even if he hasn't conveyed enough rights to BRK to make the latter the de facto owner of the patents.

I confess that I don't understand the Federal Circuit's position. As a district judge pro tem., mine not to reason why, mine but to do and die, into the valley of death, etc. Still, I am uncomfortable enforcing rules that I don't understand the basis of. As exclusive licensee, BRK has much to lose from infringement—doubtless a great deal more than Morris, for BRK has built an entire business around its exclusive right to sell the patented products. True, BRK is not the patentee, and 35 U.S.C. § 281 says only that "a patentee shall have remedy by civil action for infringement of his patent." But since "patentee" has been stretched by the Federal Circuit to embrace a transferee of all substantial rights, why can't it be stretched an inch farther to include the exclusive licensee, who is after all the only entity that actually practices the patent? And since Morris has surrendered all control over this lawsuit, his participation in it has no significance; why then should he have to be joined? What is one to make of such a statement as "a licensee may obtain sufficient rights in the patent to be entitled to seek relief from infringement, but to do so, it *ordinarily* must join the patent owner," *Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 1131 (Fed.Cir.1995) (emphasis added)?

Maybe BRK is right and Morris is no longer the owner, BRK having acquired "all substantial rights," in Federal Circuit-speak. *Aspex Eyewear, Inc. v. Miracle*

*Optics, Inc.*, 434 F.3d 1336, 1340 (Fed.Cir. 2006). (And what by the way are "insubstantial rights"?) But these are just words. Morris is the inventor and the licensor, BRK the exclusive licensee, producer, and seller. Why should Morris have to be dragged into the suit? It used to be thought that without such joinder an alleged infringer would be subject to duplicative suits. *Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459, 468, 46 S.Ct. 166, 70 L.Ed. 357 (1926). Not so, at least under modern law, since the (nominal) patentee and the exclusive licensee would be in privity and so subject to collateral estoppel. The Federal Circuit has expressed a related, and likewise it seems an ephemeral, concern: that the rule is needed to "prevent a party with lesser rights from bringing a lawsuit that may put the licensed patent at risk of being held invalid or unenforceable in an action that did not involve the patentee." *Aspex Eyewear, Inc. v. Miracle Optics, Inc., supra,* 434 F.3d at 1343. A patentee who, like Morris, authorizes the exclusive licensee to sue infringers and exercise complete control over the infringement litigation has consciously assumed the risk that the Federal Circuit wants to protect him from; and why should it? Morris is not a baby.

■ Nest is indifferent, however, to whether BRK is held not to have "all substantial rights," in which event Morris must be joined under the rule of law that we don't understand the rationale for, or if not that he should be dismissed. Since he may have to be joined, I'll leave him in as a coplaintiff. But what a waste of time!

■ So on to Nest's alternative ground for dismissal. BRK claims that Nest indirectly infringed the '780 patent by instructing its customers how to connect two or more alarms so that they can communicate with each other. "Indirect infringe-

ment" ("whoever actively induces infringement of a patent shall be liable as an infringer," 35 U.S.C. § 271(b)) corresponds, without being identical, to the criminal law doctrine of aiding and abetting. "[A] person infringes by actively and knowingly aiding and abetting another's direct infringement." *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed.Cir.1988). If Nest has instructed its customers how to infringe BRK's patent, it has violated BRK's patent rights. Nest replies that it has a "good faith" belief that the '780 patent is invalid, and that this is a defense to inducing infringement, citing *Commil USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361, 1368–69 (Fed.Cir.2013). And so it asks me to dismiss BRK's claim of induced infringement.

■ Of course if the patent is invalid there can be no infringement, induced or otherwise. But if the patent is valid and therefore infringed, it seems odd that the erroneous belief of the inducer that it was invalid should be a defense. *Commil* hedges by saying that a good-faith belief of invalidity "*may* negate the requisite intent for induced infringement" (emphasis added) and that "this is, of course, not to say that such evidence precludes a finding of induced infringement." *Id.* Here as often in judicial opinions, "of course" is just whistling in the dark. For as pointed out by the dissent, *id.* at 1374, the Supreme Court has held that what is required for induced infringement is knowledge of the patent and that it was infringed, not knowledge or belief that it was a valid patent. *Global–Tech Appliances, Inc. v. SEB S.A.*, —— U.S. ——, 131 S.Ct. 2060, 179 L.Ed.2d 1167 (2011). In any event, the issue is insufficiently developed to allow me to dismiss the claim at this juncture.

As for the motion for a preliminary injunction, it relates to only three claims in two of the patents—claim 38 of the '424 patent (which includes a "device for activation of an audible alarm device which emits user unalterable prescribed groups of pulsating, audible output tonal patterns for the duration of the sensed environmental condition") and claims 4 and 13 of the '780 patent (which include a "pre-recorded voice message wherein the message verbally describes the [type or location] of [the] detected environmental condition for the duration of detection thereof").

■ Irreparable injury is a prerequisite to a preliminary injunction; if the only injury from the defendant's alleged wrongdoing is reparable by relief offered by a final judgment should the plaintiff prevail, the plaintiff must wait. Nest argues that if Morris is indeed the owner of the patent, he must show irreparable injury to himself in order for a preliminary injunction to be justified; BRK's injuries don't count. That's a bad argument. The two cases Nest cites, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393–94, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006), and *Voda v. Cordis Corp.*, 536 F.3d 1311, 1329 (Fed. Cir.2008), do not support it. *Any* plaintiff in a suit, thus including BRK, can seek a preliminary injunction, and to get it must demonstrate irreparable injury to itself. The injunction would run in favor of the co-plaintiff who had sought it. And anyway since Morris continues to receive royalties on the patents he's licensed to BRK, any diminution in BRK's revenues that cannot be remedied by an award of damages or other relief at the end of the litigation will be irreparable harm to him. The critical question is thus whether BRK has shown irreparable harm.

■ The simplest way to think about a motion for a preliminary injunction is in terms of a sliding scale. The greater the likelihood of the movant's obtaining a final judgment in his favor, and the greater the

irreparable harm to him if the preliminary injunction is denied relative to the irreparable harm to the opposing party if it is granted, the stronger the case for granting it. E.g., *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 740–41 (7th Cir.2013); *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 387–88 (7th Cir.1984); *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir.2007) (per curiam). If, to take an extreme case, the movant has a very strong case on the merits but can prove very little irreparable harm, and his opponent, though he has a weak (though not frivolous) case on the merits is sure to incur substantial irreparable harm if the preliminary injunction is granted, the injunction should be denied because granting it would impose a big loss on the opponent yet confer little benefit on the movant. Conversely, if the movant has a weak case but will suffer great irreparable harm if denied the preliminary injunction and the opponent will suffer little or no such harm if the preliminary injunction is granted, the balance of cost and benefit will favor the movant despite his weak case on the merits. *Omega Satellite Products Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir.1982).

■ Because this case is only a few months old, and determining infringement and validity (for Nest is contesting validity as well as denying infringement) are complicated undertakings often requiring extensive discovery and expert testimony, it is difficult for me at this juncture to make an accurate assessment of the likelihood of BRK's prevailing if the case goes all the way to a final judgment. Nor, strictly speaking, need I do so if convinced that the plaintiff has failed to demonstrate that it will incur *any* irreparable harm if the preliminary injunction is denied. (To repeat, without irreparable harm there's no

reason to award the plaintiff any relief before the merits of his claim are determined after a full litigation culminating in a final judgment.) BRK has presented no even plausible evidence of irreparable harm. Nest seems more likely to incur irreparable harm from the grant of a preliminary injunction than BRK is from the denial of it.

BRK's alarm retails for about $40–50, Nest's for almost $130. (BRK has some more pricey models, but none, it appears, more than half the price of Nest's product.) Nest's alarm costs more mainly, it appears, because it has more features. The core of BRK's product is the identification of the location of the hazard; so if the alarm goes off in one's bedroom, one will know where the hazard is (in the basement, for example). BRK argues that it is this location feature (which Nest's alarm has as well, as otherwise there couldn't be patent infringement) that drives sales of environmental hazard detectors. If so, BRK need not fear Nest, because BRK's alarm has the "driver" too—and costs much less.

In these circumstances, to enjoin Nest from selling its product, thus depriving the consuming public of a premium product, particularly one directed toward ensuring public safety, without as yet evidence of infringement of a valid patent, would be unconscionable. Sensibly, therefore, BRK has backtracked since it filed its briefs and now asks only for a preliminary injunction that would require Nest to drop its allegedly infringing location component. But if that's the "driver," who will buy the product, even if, as a whole, with all its features, it is worth its high price? How will Nest explain to its customers that because of legal difficulties it will have to sell them a truncated (but pricey) product that will not satisfy their primary demand for an alarm system? BRK has even suggested

that Nest should be ordered to disable via the internet the location feature on Nest alarms that have already been sold. Imagine what that would do to Nest's goodwill. BRK wants to destroy Nest before the case is three months old.

For me to grant a preliminary injunction at this stage would do great damage to Nest and possibly to public safety (if Nest were forced to disable the location feature on its already installed alarms), would probably confer little benefit on BRK because the price difference between its product and Nest's may mean they're in different consumer markets, and would in any event be premature given the absence of evidence of irreparable harm to BRK. The existence of irreparable harm to a plaintiff implies that a final judgment in his favor will not fully repair the harm he's suffered. Is that likely in this case? Should it go to judgment without a preliminary injunction being issued and BRK prevail, it can present evidence of loss of sales of its product and relate that loss (if indeed there is a loss) to sales of Nest's product. An expert witness for BRK will estimate how many of Nest's sales at BRK's expense are attributable to its having infringed BRK's patents and how many to Nest's own innovative features. *Apple Inc. v. Samsung Electronics Co.*, 695 F.3d 1370, 1374–75 (Fed.Cir.2012). Maybe the evidence will be that BRK loses no sales to Nest. As I said, the two products may not be competing, but may instead be in different markets though doubtless with some overlap.

And bear in mind that BRK describes the verbal location warning feature as the "driver" of *both* alarm systems. Having the driver that is also Nest's driver, and costing much less, BRK's alarm should hold its own against Nest's.

In further support of its claim of irreparable harm BRK argues that because these alarm systems apparently are replaced on average only every 10 years, a customer that BRK loses this year will be lost to it for a decade. I don't see the bearing of this point. A customer to whom BRK sells this year will also be lost to it for a decade. And BRK concedes that a customer is likely to replace its alarm with an alarm made by the same company. If so that greatly favors BRK, because millions of its alarms are currently owned whereas Nest has been in business for only a few months.

But just in case I am wrong that BRK has failed to show any irreparable harm, let me consider whether, had it shown such harm and that the grant of the preliminary injunction would not create an equal or greater harm to Nest, it would be entitled to a preliminary injunction. For that it would have to demonstrate a "better than negligible" chance of winning its case. *Omega Satellite Products Co. v. City of Indianapolis, supra,* 694 F.2d at 123. It doesn't, at least on the basis of the evidence presented so far. The claims (quoted earlier) involved in the motion for a preliminary injunction specify that the hazard detector's warning sound continues "for the duration of" the detected hazard, whereas Nest's alarm has a "heads-up" feature that enables the user to interrupt and turn off false alarms (if the user had burned some toast, this might set off the alarm yet there be no hazard). BRK's rejoinder that if the smoke reaches a dangerous level the heads-up feature doesn't operate is accurate, but that is itself a safety feature; for if the warning sound ceased when there was a real hazard the occupants would be lulled into mistakenly believing that the warning had been a false alarm.

Nest points out that national and international fire safety codes dating from 1990 and 1996 featured voice alerts between

warning sounds, hence (along with patents discussed in Nest's brief in opposition to the grant of a preliminary injunction) rendering BRK's inclusion of a vocal statement of location between the warning sounds obvious. BRK's reply is evasive, pointing only to the "overwhelming commercial success and industry praise" of its products—but many commercially successful and praiseworthy products are not protected from competition by valid patents.

At this stage of the proceedings, the likelihood of BRK's being able to prove its case seems faint, and of proving irreparable harm nil. BRK's motion for entry of a preliminary injunction is therefore denied, and likewise Nest's motion to dismiss the complaint.