# United States Court of Appeals for the Federal Circuit

---

**DBN HOLDING, INC., BDN LLC,**
*Appellants*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

---

2020-2342

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-854.

---

Decided: March 1, 2022

---

STACY O. STITHAM, Brann & Isaacson, Lewiston, ME, argued for appellants. Also represented by PETER J. BRANN, DAVID SWETNAM-BURLAND.

WAYNE W. HERRINGTON, Office of the General Counsel, International Trade Commission, Washington, DC, argued for appellee. Also represented by DOMINIC L. BIANCHI, CLINT A. GERDINE.

---

Before MOORE, *Chief Judge*, NEWMAN and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge.*

DBN Holding, Inc. and BDN LLC appeal the U.S. International Trade Commission's remand determination denying their petition to rescind or modify the civil penalty imposed by the International Trade Commission for violations of a consent order. In a prior appeal, we instructed the International Trade Commission to assess on remand "whether to modify or rescind the civil penalty pursuant to 19 C.F.R. § 210.76 based on the final judgment of invalidity" of the patent asserted in the underlying Section 337[1] investigation.[2] *DBN Holding, Inc. v. Int'l Trade Comm'n*, 755 F. App'x 993, 998 (Fed. Cir. 2018) (non-precedential). On remand, the International Trade Commission determined that the civil penalty did not require modification or rescission and therefore denied the petition. Because we discern no abuse of discretion in the International Trade Commission's determination, we affirm.

BACKGROUND[3]

This is the fourth appeal relating to this case that has come to our court. *See DeLorme Publ'g Co. v. BriarTek IP, Inc.*, 622 F. App'x 912, 913 (Fed. Cir. 2015) (non-precedential) ("*DBN I*"); *DeLorme Publ'g Co. v. Int'l Trade Comm'n*, 805 F.3d 1328, 1330 (Fed. Cir. 2015) ("*DBN II*"); *DBN Holding, Inc. v. Int'l Trade Comm'n*, 755 F. App'x 993, 994 (Fed. Cir. 2018) (non-precedential) ("*DBN III*"). Given this lineage, we do not repeat the extensive background information from those prior appeals, and we focus on those

---

[1]    19 U.S.C. § 1337.

[2]    Inv. No. 337-TA-854.

[3]    We refer to the appellants and their predecessors in interest collectively as "DBN." Appellant DBN Holding, Inc. was formerly known as DeLorme Publishing Company, Inc. Appellant BDN LLC was formerly known as DeLorme InReach LLC.

background and procedural details necessary for us to review and resolve this appeal.

On November 12, 2015, we issued both *DBN I* and *DBN II*. In *DBN I*, we affirmed the Eastern District of Virginia's grant of summary judgment invalidating the same patent claims that patent owner BriarTek IP, Inc. ("BriarTek") had asserted against DBN in a parallel investigation before the U.S. International Trade Commission ("ITC") under Section 337. *See DBN I*, 622 F. App'x at 913 (affirming invalidation of claims 1, 2, 5–12, 17, 34, and 35 of U.S. Patent No. 7,991,380); *see also DBN II*, 805 F.3d at 1333 (listing claims 1, 2, 5, 10–12, and 34 as asserted claims in the ITC investigation). In *DBN II*, we held that (1) the ITC did not abuse its discretion in imposing on DBN a $6,242,500 civil penalty for violating the consent order[4]

---

[4]    The consent order stated as follows:

1. Upon entry of the proposed Consent Order, [DBN] shall not import into the United States, sell for importation into the United States, or sell or offer for sale within the United States after importation any two-way global satellite communication devices, system, and components thereof, that infringe claims 1, 2, 5, 10–12, and 34 of the '380 Patent after April 1, 2013, until the expiration, invalidation, and/or unenforceability of the '380 Patent.

2. [DBN] shall be precluded from seeking judicial review or otherwise challenging or contesting the validity of this Consent Order. . . .

4. The Consent Order shall not apply with respect to any claim of any intellectual property right that has expired or been found or adjudicated invalid or unenforceable by the [ITC] or a court or agency of

DBN signed in order to terminate the ITC investigation, and that (2) our affirmance in *DBN I* of the district court's invalidation of the asserted claims did not negate—under the consent order's unambiguous terms—DBN's pre-invalidation violations of the consent order.    805 F.3d at 1333–34.

On December 22, 2015, DBN filed a petition before the ITC under 19 C.F.R. § 210.76 seeking to rescind or modify the civil penalty order issued by the ITC against DBN for violating the consent order.  J.A. 721–31.  DBN argued in its petition that the civil penalty order should be set aside or modified because the patent claims asserted in the Section 337 investigation were found by a district court to be invalid in a decision subsequently affirmed by this court. DBN asserted that the invalidation of the claims effected by those two decisions constituted a "changed condition[] of fact or law" warranting the civil penalty's modification or rescission under § 210.76.  J.A. 725.

The ITC denied DBN's petition on res judicata grounds, interpreting *DBN II* as deciding that our contemporaneous invalidity affirmance in *DBN I* had no effect on the civil penalty order.  J.A. 897–900.  DBN again appealed to this court, arguing that the ITC erred in relying on res judicata grounds to deny DBN's petition.  *DBN III*, 755 F. App'x at 996.  We agreed, explaining that *DBN II* did not divest the ITC of the authority to rescind or modify the civil penalty in light of the invalidity judgment.  *Id.* at 997–98 ("Our holding in *[DBN II]* that the invalidation of the [asserted] claims had no retroactive effect on the [c]onsent [o]rder does not bar the [ITC] from determining whether to modify or rescind the civil penalty under 19 C.F.R. §§ 210.76(a)(1)

---

competent jurisdiction, provided that such finding or judgment has become final and non-reviewable.

J.A. 168.

or (a)(2)." (footnote omitted)).  We therefore remanded for the ITC to decide, in the first instance, whether to rescind or modify the civil penalty in light of our decision that the relevant patent claims are invalid.  *Id.* at 998.

On remand, the parties submitted briefing, and the ITC again denied DBN's petition to rescind or modify the order.  *Certain Two-Way Glob. Satellite Commc'n Devices, Sys. & Components Thereof*, Inv. No. 337-TA-854 (Remand), Comm'n Op., 2020 WL 5941990, at *2 (Aug. 18, 2020) ("*Satellites*") (J.A. 10–51).  The ITC pointed out that 19 C.F.R. § 210.76(a)(1) contemplates modifying or rescinding "remedial orders, *i.e.*, exclusion orders, cease and desist orders, and consent orders," but "does not refer to civil penalty orders."  *Id.* at *16.  The ITC rejected DBN's argument that the ITC had rescinded civil penalty orders in similar cases identified by DBN.  *Id.* at *18–23.  According to the ITC, DBN identified three categories of cases to support its argument: (1) the *Magnets* case[5] in which the ITC rescinded a penalty order that had been previously affirmed by this court; (2) the *ATMs* case[6] in which the ITC rescinded remedial orders in light of this court's decisions invalidating the asserted patent claims; and (3) other cases[7] in which the ITC rescinded remedial orders in light

---

[5]    *Certain Neodymium-Iron-Boron Magnets, Magnet Alloys, and Articles Containing Same*, Inv. No. 337-TA-372, 64 Fed. Reg. 56,515–16 (Oct. 20, 1999) ("*Magnets*").

[6]    *Certain Automated Teller Machines, ATM Modules, Components Thereof, and Products Containing the Same*, Inv. No. 337-TA-989, Comm'n Notice (Mar. 11, 2019).

[7]    *E.g., Certain Composite Wear Components and Products Containing Same*, Inv. No. 337-TA-644 (Feb. 10, 2011); *Certain Steel Rod Treating Apparatus and Components Thereof*, Inv. No. 337-TA-97 (Jan. 15, 1982); and

of a district court's invalidation of the asserted patent claims. *Id.* The ITC concluded that none of those cases supported DBN's petition. *Id.* at \*18.

The ITC then reassessed the relevant factors for determining civil penalties and concluded that the invalidation of the asserted claims did not change its original assessment of those factors when imposing the penalty. The factors, known as the *EPROMs* factors, include:

> (1) the good or bad faith of the respondent, (2) the injury to complainant, (3) respondent's ability to pay, (4) the extent to which respondent has benefited from its violations, (5) the need to vindicate the authority of the Commission, and (6) the public interest.

*Id.* at \*17 (first citing *San Huan New Materials High Tech, Inc. v. Int'l Trade Comm'n*, 161 F.3d 1347, 1362 (Fed. Cir. 1998); then citing *Certain Erasable Programmable Read Only Memories*, Inv. No. 337-TA-276 (Enforcement), Comm'n Op. (July 19, 1991) ("*EPROMs*")); *see also id.* at \*23–27.

The first factor, good faith, involves considering certain other factors called the *Ninestar* factors, namely whether the respondent

> (1) had a reasonable basis to believe that the violating product was not within the scope of the Commission's order, (2) requested an advisory opinion or clarification from the Commission, (3) provided any opinion of counsel indicating that it obtained legal advice before engaging in the acts underlying the charge of violation, (4) decided which products were subject to the order based on the decisions of

---

*Certain Large Video Matrix Display Systems and Components Thereof*, Inv. No. 337-TA-75 (Aug. 10, 1980).

> management and technical personnel, without le-
> gal advice, and (5) satisfied its reporting require-
> ments under the relevant Commission order.

*Id.* at \*23 (quoting *Certain Ink Cartridges and Components Thereof*, Inv. No. 337-TA-565, Comm'n Op., 2010 WL 5642166, at \*14 (Sept. 24, 2009), *aff'd sub nom. Ninestar Tech. Co. v. Int'l Trade Comm'n*, 667 F.3d 1373, 1385 (Fed. Cir. 2012)). The ITC rejected DBN's argument that it acted in good faith in violating the consent order because it held a reasonable belief that the asserted claims were invalid. *Id.* at \*24. The ITC observed that DBN did not address the *Ninestar* factors and that, in any event, a good faith belief of invalidity was not among those factors. *Id.* Further, the ITC reasoned, considering invalidity would be redundant because "the possibility of an invalidity judgment is expressly contemplated by the terms of the [c]onsent [o]rder and the effect of such a judgment is expressly provided for by the terms of the [c]onsent [o]rder." *Id.* at \*25.

With respect to *EPROMs* factors two through five, the ITC explained that DBN presented no basis for finding that the invalidation of the asserted claims affected the civil penalty amount or the ability of DBN to pay the amount. *Id.* at \*25–26. Turning to "public interest," the sixth *EPROMs* factor, the ITC determined that DBN had again not presented any basis for modifying or rescinding the civil penalty on public interest grounds. *Id.* at \*26–27. It rejected DBN's argument that "the civil penalty is no longer in the public interest given the EDVA invalidity judgment." *Id.* at \*26. The ITC again reasoned that DBN's position overlooks the fact that the consent order expressly accounts for the subsequent invalidation of the patent claims. *Id.* The ITC further explained that "it is important that violators like [DBN] and potential future violators of consent orders clearly understand that the Commission expects such orders to be complied with and that there will be consequences if they are not." *Id.* The ITC concluded, for all the foregoing reasons, that reassessment of the

*EPROMs* factors did not warrant rescinding or modifying the civil penalty in light of the asserted claims' invalidation. *Id.* at \*27.

Finally, the ITC rejected DBN's public policy argument that "[b]ecause there can be no infringement of an invalid patent claim, there is no longer an unfair competitive act for the Commission to remedy" and that "[a]t this juncture, there is *no* statutory purpose served by the [c]ivil [p]enalty [o]rder." *Id.* (citation omitted). The ITC explained that this argument ignores the language of the consent order contemplating the invalidation of the asserted claims. *Id.*

DBN appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(6).

STANDARD OF REVIEW

We review the ITC's denial of a petition to rescind or modify an order pursuant to 19 C.F.R. § 210.76 for an abuse of discretion. *See* 5 U.S.C. § 706(2)(A). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) (citing *Arnold P'ship v. Dudas*, 362 F.3d 1338, 1340 (Fed. Cir. 2004)).

DISCUSSION

I

DBN argues that this court's precedent and ITC practice support its petition to modify or rescind the ITC's civil penalty order, and accordingly that the ITC abused its discretion by denying the petition. *See* Appellants' Br. 13–17, 20–21. First, DBN contends that the ITC erred in holding that the *Magnets* case does not compel modification or rescission of the civil penalty order. *See* Appellants' Br. 14–15, 20–28. DBN acknowledges that *Magnets*

involved a retroactive license agreement between the parties that negated prior acts of infringement.  *See, e.g.*, *id.* at 23 ("In the case of the *Magnets* respondents, it was a retroactive license that rendered their prior actions non-infringing.").  DBN nevertheless contends that "there can be no material difference" between that case and this one involving the "final invalidation of patent claims that negates prior acts of infringement."  *Id.* at 15.  We disagree that *Magnets* governs this case.

In *Magnets*, the consent order prohibited importation of the infringing articles, "except under consent or license."  *Certain Neodymium-Iron-Boron Magnets, Magnet Alloys, and Articles Containing Same*, Inv. No. 337-TA-372, Comm'n Notice, 1995 WL 945772, at *2 (Oct. 10, 1995).  The ITC later determined that respondents had violated the consent order and assessed a civil penalty.  *Magnets*, 64 Fed. Reg. at 56,515.  The parties reached a settlement and filed a joint motion to vacate the penalty on the grounds that they had agreed upon a retroactive license.  *See id.*; *see also* Appellants' Br. 23.  The ITC granted the parties' joint motion given that the retroactive settlement authorized the action that was the subject of the civil penalty.  Unlike in *Magnets*, the parties here did not reach any such retroactive settlement, Appellee's Br. 31, or any other form of agreement or settlement addressing the consent order violations.  DBN does not explain how its violations of the consent order were authorized.  DBN points out that it is now impossible to seek a retroactive license because the asserted patent claims have been invalidated.  Appellants' Br. 26.  That point does not help DBN's position because absent a retroactive settlement, we look to the consent order for such authorizations.  The fact remains that, unlike in *Magnets*, the actions leading to DBN's violation of the consent order were never authorized by the ITC or the complainant in the underlying Section 337 investigation.

DBN's arguments ignore the instruction we provided in *DBN II* that "[c]onsent decrees and orders have

attributes both of contracts and of judicial decrees." 805 F.3d at 1333 (quoting *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 237 n.10 (1975)). By entering the consent order, DBN agreed to discontinue any violation of Section 337. The ITC, in turn, terminated the investigation as required. From a contractual perspective, the breach of this promise provides the ITC a distinct ground for imposing a civil penalty. DBN agreed to the terms of the consent order, and those terms "unambiguously indicate[] that the invalidation trigger—like the expiration and unenforceability triggers—applies only prospectively." *Id.* at 1335. Had the consent order been written in retrospective terms, DBN might have a stronger argument that the invalidation of the asserted claims renders the consent order null and void, or that modification is required. But under the clear terms of the consent order, DBN remained potentially liable for any violations up to the time of invalidation. *Id.*

DBN points to cases involving modification or rescission of remedial orders as a basis to modify or rescind the civil penalty order in this case. *See* Appellants' Br. 28–34. DBN appears to concede the ITC's point that remedial orders are different from civil penalty orders in that the former are forward-looking, i.e., they prohibit future conduct, while the latter are backward-looking, i.e., they penalize past conduct. *Id.* at 33–34 ("Maybe so."); *see also Satellites*, 2020 WL 5941990, at *16. DBN, however, argues that "for all *relevant* purposes," remedial orders and the ITC's civil penalty order here are "the same" because they are all predicated on "infringing conduct [that can] no longer be . . . considered" in light of the asserted claims' invalidation. Appellants' Br. 33–34.

We are not persuaded that the ITC's past practice involving the rescission or modification of a remedial order supports DBN's position that the civil penalty order must be rescinded or modified. As we explained in *DBN III*, the ITC has relied on § 210.76 as a basis to rescind or modify a

civil penalty order on rare occasion, even though that pro-vision, on its face, only contemplates rescinding or modify-ing remedial orders. 755 F. App'x at 997; *see also* 19 C.F.R. § 210.76 (allowing persons to submit petitions to rescind or modify "an exclusion order, cease and desist order, or con-sent order"); *Magnets*, 64 Fed. Reg. at 56,515 (vacating a civil penalty "under the authority of . . . section 210.76"). It is unclear whether and under what circumstances § 210.76 supports rescission or modification of a civil penalty order, but we need not decide that question today. What is evi-dent in § 210.76 is that it commits to the ITC's discretion the decision to rescind or modify previous orders. *See* 19 C.F.R. § 210.76 (permitting persons to file petitions for rescission or modification; stating the ITC "may also on its own initiative consider such action"; and stating that "*[i]f the Commission makes such a determination*, it shall notify the Secretary of the Treasury and U.S. Custom and Border Protection" (emphasis added)).

For all the above reasons, we are not persuaded that the case law identified by DBN requires a conclusion that the ITC determination denying DBN's petition was an abuse of discretion.

II

DBN also contends that the ITC erred in reassessing the *EPROMs* factors and concluding that those factors do not require rescission or modification of the civil penalty order. *See* Appellants' Br. 34–46. Addressing the first fac-tor, good or bad faith, *DBN III*, 755 F. App'x at 997 n.2, DBN contends that it violated the consent order in good faith because it believed, when committing the violation, that the asserted claims were invalid, Appellants' Br. at 36–40. DBN argues that it was operating under this court's rule in *Commil USA, LLC v. Cisco Systems, Inc.*— which was subsequently vacated by the Supreme Court—that "evidence of an accused inducer's good-faith belief of invalidity may negate the requisite intent for induced

infringement." 720 F.3d 1361, 1368 (Fed. Cir. 2013), *vacated*, 575 U.S. 632, 647 (2015). DBN thus equates, without a reasonable basis or legal authority, the intent required for induced infringement with the good faith factors under *Ninestar*. But it does not follow that lacking the requisite intent for induced infringement means that a party necessarily acts in good faith when violating an ITC consent order. These two tests involve separate legal analyses and determinations. For example, DBN points to nothing in *Commil* that modified the *Ninestar* factors, nor does it cite any authority to support its proposition that a lack of intent for induced infringement purposes is relevant to the *Ninestar* factors inquiry. DBN thus does not persuasively show that the ITC abused its discretion in its reassessment of the good faith *EPROMs* factor.

The second *EPROMs* factor is the injury to the public. *DBN III*, 755 F. App'x at 997 n.2. The ITC found no harm to BriarTek as a result of DBN's consent order violation. *Satellites*, 2020 WL 5941990, at \*25. Neither party challenges that finding on appeal. Appellants' Br. 40; Appellee's Br. 40.

Regarding the third *EPROMs* factor—DBN's ability to pay the penalty, *DBN III*, 755 F. App'x at 997 n.2—DBN contends that "[t]he fact that a party could pay an unlawful fine is not itself a reason to leave the fine in place," Appellants' Br. 40. The ITC responds that it previously found that DBN was able to pay the penalty assessed, and DBN presented no basis on remand to conclude that the asserted claims' invalidation had any effect on that ability. Appellee's Br. 40–41. We perceive no reason for finding that the ITC's reassessment of this factor warrants rescission or modification of the penalty.

Turning to *EPROMs* factor four, the extent to which DBN has benefited from its violations, *DBN III*, 755 F. App'x at 997 n.2, DBN does not challenge the ITC's finding that DBN financially benefited from its sales that

were in violation of the consent order, Appellants' Br. 40–43. Instead, DBN argues that it cannot be deemed to have benefited from its violations (which were patent infringements) because the subsequent invalidation of the asserted claims of the '380 patent negated all such infringement. *Id.* DBN again overlooks the nature of consent orders, which have attributes of both contracts and judicial decrees. *See DBN II*, 805 F.3d at 1333. Here, DBN promised in the consent order not to commit unfair trade acts of infringement up until the point of patent invalidation, but DBN violated the consent order by engaging in infringing acts before that point. Even accepting that invalidation of the claims may negate DBN's infringement, we are not persuaded that such invalidation negates its consent order violations. We discern no abuse of discretion in the ITC's determination that reassessment of the fourth *EPROMs* factor does not require rescission or modification.

Regarding the fifth *EPROMs* factor, the need to vindicate the authority of the ITC, *DBN III*, 755 F. App'x at 997 n.2, DBN argues that "[t]he [ITC] cannot predicate a massive civil penalty solely to vindicate its own power," Appellants' Br. 43. Even if that were true, we are not persuaded that the ITC took such a course of action. Instead, the ITC reassessed all the *EPROMs* factors and again determined that those factors, taken together, support the civil penalty. *See Satellites*, 2020 WL 5941990, at \*23–27. Because consent orders would be useless if their violation had no consequence, the ITC's enforcement of the consent order via a civil penalty was a reasonable exercise of its enforcement authority under Section 337 and ITC regulations, especially in light of the record evidence of DBN's bad faith in violating the consent orders. *See DBN II*, 805 F.3d at 1333 ("[DBN] has not shown, for example, that there was clear error in the Commission's findings regarding [DBN]'s bad faith . . . ."). We see no reason to disturb the ITC's reassessment of the fifth *EPROMs* factor.

As for the remaining *EPROMs* factor, the public interest, *DBN III*, 755 F. App'x at 997 n.2, DBN contends that "[t]he public has no interest in penalizing a company for engaging in conduct that in no way harmed the public," Appellants' Br. 44. We agree with the ITC that deterring violation of its orders by imposing civil penalties for violative conduct is in the public interest. We discern no error in the ITC's reassessment of the public interest factor.

## CONCLUSION

On remand, we instructed the ITC to assess in the first instance the law and factors relevant to the civil penalty order issued against DBN for violating the consent order that prohibited unfair trade acts of infringement involving claims that were deemed invalid subsequent to the entry of the consent order. We conclude that the ITC's remand determination is based on a correct interpretation of law and findings that are reasonable and supported by substantial evidence. We hold that the ITC did not abuse its discretion in declining to rescind or modify its civil penalty order in view of the asserted claims' invalidation. We have considered DBN's remaining arguments and find them unpersuasive. For the reasons explained above, we affirm.

## **AFFIRMED**

### COSTS

No costs.