(Slip Opinion) OCTOBER TERM, 2014 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## COMMIL USA, LLC *v*. CISCO SYSTEMS, INC.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 13–896. Argued March 31, 2015—Decided May 26, 2015

Petitioner Commil USA, LLC, holder of a patent for a method of implementing short-range wireless networks, filed suit, claiming that respondent Cisco Systems, Inc., a maker and seller of wireless networking equipment, had directly infringed Commil's patent in its networking equipment and had induced others to infringe the patent by selling the infringing equipment for them to use. After two trials, Cisco was found liable for both direct and induced infringement. With regard to inducement, Cisco had raised the defense that it had a good-faith belief that Commil's patent was invalid, but the District Court found Cisco's supporting evidence inadmissible. The Federal Circuit affirmed the District Court's judgment in part, vacated in part, and remanded, holding, as relevant here, that the trial court erred in excluding Cisco's evidence of its good-faith belief that Commil's patent was invalid.

*Held*: A defendant's belief regarding patent validity is not a defense to an induced infringement claim. Pp. 5–14.

(a) While this case centers on inducement liability, 35 U. S. C. §271(b), which attaches only if the defendant knew of the patent and that "the induced acts constitute patent infringement," *Global-Tech Appliances, Inc.* v. *SEB S. A.*, 563 U. S. ___, ___, the discussion here also refers to direct infringement, §271(a), a strict-liability offense in which a defendant's mental state is irrelevant, and contributory infringement, §271(c), which, like inducement liability, requires knowledge of the patent in suit and knowledge of patent infringement, *Aro Mfg. Co.* v. *Convertible Top Replacement Co.*, 377 U. S. 476, 488 (*Aro II*). Pp. 5–6.

(b) In *Global-Tech*, this Court held that "induced infringement . . . requires knowledge that the induced acts constitute patent infringe-

ment," 563 U. S., at ___, relying on the reasoning of *Aro II,* a contributory infringement case, because the mental state imposed in each instance is similar. Contrary to the claim of Commil and the Government as *amicus,* it was not only knowledge of the existence of respondent's patent that led the Court to affirm the liability finding in *Global-Tech,* but also the fact that petitioner's actions demonstrated that it knew it would be causing customers to infringe respondent's patent. 563 U. S., at ___. Qualifying or limiting that holding could make a person, or entity, liable for induced or contributory infringement even though he did not know the acts were infringing. *Global-Tech* requires more, namely proof the defendant knew the acts were infringing. And that opinion was clear in rejecting any lesser mental state as the standard. *Id.,* at ___. Pp. 6–9.

(c) Because induced infringement and validity are separate issues and have separate defenses under the Act, belief regarding validity cannot negate §271(b)'s scienter requirement of "actively induce[d] infringement," *i.e.*, the intent to "bring about the desired result" of infringement, 563 U. S., at ___. When infringement is the issue, the patent's validity is not the question to be confronted. See *Cardinal Chemical Co.* v. *Morton Int'l, Inc.,* 508 U. S. 83. Otherwise, the long held presumption that a patent is valid, §282(a), would be undermined, permitting circumvention of the high bar—the clear and convincing standard—that defendants must surmount to rebut the presumption. See *Microsoft Corp.* v. *i4i Ltd. Partnership,* 564 U. S. ___, ___–___. To be sure, if a patent is shown to be invalid, there is no patent to be infringed. But the orderly administration of the patent system requires courts to interpret and implement the statutory framework to determine the procedures and sequences that the parties must follow to prove the act of wrongful inducement and any related issues of patent validity.

There are practical reasons not to create a defense of belief in invalidity for induced infringement. Accused inducers who believe a patent is invalid have other, proper ways to obtain a ruling to that effect, including, *e.g.,* seeking *ex parte* reexamination of the patent by the Patent and Trademark Office, something Cisco did here. Creating such a defense could also have negative consequences, including, *e.g.,* rendering litigation more burdensome for all involved. Pp. 9–13.

(d) District courts have the authority and responsibility to ensure that frivolous cases—brought by companies using patents as a sword to go after defendants for money—are dissuaded, though no issue of frivolity has been raised here. Safeguards—including, *e.g.,* sanctioning attorneys for bringing such suits, see Fed. Rule Civ. Proc. 11—combined with the avenues that accused inducers have to obtain rulings on the validity of patents, militate in favor of maintaining the

Syllabus

separation between infringement and validity expressed in the Patent Act. Pp. 13–14.

720 F. 3d 1361, vacated and remanded.

KENNEDY, J., delivered the opinion of the Court, in which GINSBURG, ALITO, SOTOMAYOR, and KAGAN, JJ., joined, and in which THOMAS, J., joined as to Parts II–B and III. SCALIA, J., filed a dissenting opinion, in which ROBERTS, C. J., joined. BREYER, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 13–896

_____

## COMMIL USA, LLC, PETITIONER *v.* CISCO SYSTEMS, INC.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[May 26, 2015]

JUSTICE KENNEDY delivered the opinion of the Court.*

A patent holder, and the holder's lawful licensees, can recover for monetary injury when their exclusive rights are violated by others' wrongful conduct. One form of patent injury occurs if unauthorized persons or entities copy, use, or otherwise infringe upon the patented invention. Another form of injury to the patent holder or his licensees can occur when the actor induces others to infringe the patent. In the instant case, both forms of injury—direct infringement and wrongful inducement of others to commit infringement—were alleged. After two trials, the defendant was found liable for both types of injury. The dispute now before the Court concerns the inducement aspect of the case.

## I

The patent holder who commenced this action is the petitioner here, Commil USA, LLC. The technical details of Commil's patent are not at issue. So it suffices to say, with much oversimplification, that the patent is for a

_____

*JUSTICE THOMAS joins Parts II–B and III of this opinion.

method of implementing short-range wireless networks. Suppose an extensive business headquarters or a resort or a college campus wants a single, central wireless system (sometimes called a Wi-Fi network). In order to cover the large space, the system needs multiple base stations so a user can move around the area and still stay connected. Commil's patent relates to a method of providing faster and more reliable communications between devices and base stations. The particular claims of Commil's patent are discussed in the opinion of the United States Court of Appeals for the Federal Circuit. 720 F. 3d 1361, 1364–1365, 1372 (2013).

Commil brought this action against Cisco Systems, Inc., which makes and sells wireless networking equipment. In 2007, Commil sued Cisco in the United States District Court for the Eastern District of Texas. Cisco is the respondent here. Commil alleged that Cisco had infringed Commil's patent by making and using networking equipment. In addition Commil alleged that Cisco had induced others to infringe the patent by selling the infringing equipment for them to use, in contravention of Commil's exclusive patent rights.

At the first trial, the jury concluded that Commil's patent was valid and that Cisco had directly infringed. The jury awarded Commil $3.7 million in damages. As to induced infringement, the jury found Cisco not liable. Commil filed a motion for a new trial on induced infringement and damages, which the District Court granted because of certain inappropriate comments Cisco's counsel had made during the first trial.

A month before the second trial Cisco went to the United States Patent and Trademark Office and asked it to reexamine the validity of Commil's patent. The Office granted the request; but, undoubtedly to Cisco's disappointment, it confirmed the validity of Commil's patent. App. 159, 162.

Back in the District Court, the second trial proceeded, limited to the issues of inducement and damages on that issue and direct infringement. As a defense to the claim of inducement, Cisco argued it had a good-faith belief that Commil's patent was invalid. It sought to introduce evidence to support that assertion. The District Court, however, ruled that Cisco's proffered evidence of its good-faith belief in the patent's invalidity was inadmissible. While the District Court's order does not provide the reason for the ruling, it seems the court excluded this evidence on the assumption that belief in invalidity is not a defense to a plaintiff's claim that the defendant induced others to infringe.

At the close of trial, and over Cisco's objection, the District Court instructed the jury that it could find inducement if "Cisco actually intended to cause the acts that constitute . . . direct infringement and that Cisco knew or should have known that its actions would induce actual infringement." *Id.,* at 21. The jury returned a verdict for Commil on induced infringement and awarded $63.7 million in damages.

After the verdict, but before judgment, this Court issued its decision in *Global-Tech Appliances, Inc.* v. *SEB S. A.*, 563 U. S. \_\_\_ (2011). That case, as will be discussed in more detail, held that, in an action for induced infringement, it is necessary for the plaintiff to show that the alleged inducer knew of the patent in question and knew the induced acts were infringing. *Id.*, at \_\_\_ (slip op., at 10). Relying on that case, Cisco again urged that the jury instruction was incorrect because it did not state knowledge as the governing standard for inducement liability. The District Court denied Cisco's motion and entered judgment in Commil's favor.

Cisco appealed to the United States Court of Appeals for the Federal Circuit. The Court of Appeals affirmed in part, vacated in part, and remanded for further proceed-

ings.   The court concluded it was error for the District
Court to have instructed the jury that Cisco could be liable
for induced infringement if it "'knew or should have
known'" that its customers infringed.  720 F. 3d, at 1366.
The panel held that "induced infringement 'requires
knowledge that the induced acts constitute patent in-
fringement.'"   *Ibid.* (quoting *Global-Tech*, *supra,* at ___
(slip op., at 10)).   By stating that Cisco could be found
liable if it "'knew or should have known that its actions
would induce actual infringement,'" the Court of Appeals
explained, the District Court had allowed "the jury to find
[Cisco] liable based on mere negligence where knowledge
is required."  720 F. 3d, at 1366.  That ruling, which re-
quires a new trial on the inducement claim with a corrected
instruction on knowledge, is not in question here.

What is at issue is the second holding of the Court of
Appeals, addressing Cisco's contention that the trial court
committed further error in excluding Cisco's evidence that
it had a good-faith belief that Commil's patent was in-
valid.  Beginning with the observation that it is "axiomatic
that one cannot infringe an invalid patent," the Court of
Appeals reasoned that "evidence of an accused inducer's
good-faith belief of invalidity may negate the requisite
intent for induced infringement."  *Id.,* at 1368.  The court
saw "no principled distinction between a good-faith belief
of invalidity and a good-faith belief of non-infringement for
the purpose of whether a defendant possessed the specific
intent to induce infringement of a patent."  *Ibid.*

Judge Newman dissented on that point.   In Judge
Newman's view a defendant's good-faith belief in a pa-
tent's invalidity is not a defense to induced infringement.
She reasoned that "whether there is infringement in fact
does not depend on the belief of the accused infringer that
it might succeed in invalidating the patent."  *Id.,* at 1374
(opinion concurring in part and dissenting in part).   Both
parties filed petitions for rehearing en banc, which were

denied. 737 F. 3d 699, 700 (2013). Five judges, however, would have granted rehearing en banc to consider the question whether a good-faith belief in invalidity is a defense to induced infringement. *Id.,* at 700 (Reyna, J., dissenting from denial of rehearing en banc).

This Court granted certiorari to decide that question. 574 U. S. \_\_\_ (2014).

## II

Although the precise issue to be addressed concerns a claim of improper inducement to infringe, the discussion to follow refers as well to direct infringement and contributory infringement, so it is instructive at the outset to set forth the statutory provisions pertaining to these three forms of liability. These three relevant provisions are found in §271 of the Patent Act. 35 U. S. C. §271.

Subsection (a) governs direct infringement and provides:

> "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

Under this form of liability, a defendant's mental state is irrelevant. Direct infringement is a strict-liability offense. *Global-Tech*, 563 U. S., at \_\_\_ (slip op., at 5, n. 2).

Subsection (b) governs induced infringement:

> "Whoever actively induces infringement of a patent shall be liable as an infringer."

In contrast to direct infringement, liability for inducing infringement attaches only if the defendant knew of the patent and that "the induced acts constitute patent infringement." *Id.*, at \_\_\_ (slip op., at 10). In Commil and the Government's view, not only is knowledge or belief in

the patent's validity irrelevant, they further argue the party charged with inducing infringement need not know that the acts it induced would infringe. On this latter point, they are incorrect, as will be explained below.

Subsection (c) deals with contributory infringement:

> "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer."

Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement. *Aro Mfg. Co.* v. *Convertible Top Replacement Co.*, 377 U. S. 476, 488 (1964) (*Aro II*).

This case asks a question of first impression: whether knowledge of, or belief in, a patent's validity is required for induced infringement under §271(b).

A

Before turning to the question presented, it is necessary to reaffirm what the Court held in *Global-Tech*. Commil and the Government (which supports Commil in this case) argue that *Global-Tech* should be read as holding that only knowledge of the patent is required for induced infringement. That, as will be explained, would contravene *Global-Tech*'s explicit holding that liability for induced infringement can only attach if the defendant knew of the patent and knew as well that "the induced acts constitute patent infringement." 563 U. S., at ___ (slip op., at 10).

In *Global-Tech*, the plaintiff, SEB, had invented and patented a deep fryer. A few years later, Sunbeam asked Pentalpha to supply deep fryers for Sunbeam to sell. To make the deep fryer, Pentalpha bought an SEB fryer and copied all but the cosmetic features. Pentalpha then sold the fryers to Sunbeam, which in turn sold them to customers. SEB sued Pentalpha for induced infringement, arguing Pentalpha had induced Sunbeam and others to sell the infringing fryers in violation of SEB's patent rights. In defense, Pentalpha argued it did not know the deep fryer it copied was patented and therefore could not be liable for inducing anyone to infringe SEB's patent. The question presented to this Court was "whether a party who 'actively induces infringement of a patent' under 35 U. S. C. §271(b) must know that the induced acts constitute patent infringement." *Id.,* at \_\_\_ (slip op., at 1).

After noting the language of §271(b) and the case law prior to passage of the Patent Act did not resolve the question, the *Global-Tech* Court turned to *Aro II*, a case about contributory infringement. The *Global-Tech* Court deemed that rules concerning contributory infringement were relevant to induced infringement, because the mental state imposed in each instance is similar. Before the Patent Act, inducing infringement was not a separate theory of indirect liability but was evidence of contributory infringement. 563 U. S., at \_\_\_ (slip op., at 5). Thus, in many respects, it is proper to find common ground in the two theories of liability.

*Aro II* concluded that to be liable for contributory infringement, a defendant must know the acts were infringing. 377 U. S*.,* at 488. In *Global-Tech*, the Court said this reasoning was applicable, explaining as follows:

> "Based on this premise, it follows that the same knowledge is needed for induced infringement under §271(b). As noted, the two provisions have a common

origin in the pre-1952 understanding of contributory infringement, and the language of the two provisions creates the same difficult interpretive choice. It would thus be strange to hold that knowledge of the relevant patent is needed under §271(c) but not under §271(b).

"Accordingly, we now hold that induced infringement under §271(b) requires knowledge that the induced acts constitute patent infringement." 563 U. S., at ___ (slip op., at 10).

In support of Commil, the Government argues against the clear language of *Global-Tech*. According to the Government, all *Global-Tech* requires is knowledge of the patent: "The Court did not definitively resolve whether Section 271(b) additionally requires knowledge of the infringing nature of the induced acts." Brief for United States as *Amicus Curiae* 9. See also Brief for Petitioner 17. Together, Commil and the Government claim the "factual circumstances" of *Global-Tech* "did not require" the Court to decide whether knowledge of infringement is required for inducement liability. Brief for United States as *Amicus Curiae* 12. See also Brief for Petitioner 23–24. But in the Court's *Global-Tech* decision, its description of the factual circumstances suggests otherwise. The Court concluded there was enough evidence to support a finding that Pentalpha knew "the infringing nature of the sales it encouraged Sunbeam to make." 563 U. S., at ___ (slip op., at 14). It was not only knowledge of the existence of SEB's patent that led the Court to affirm the liability finding but also it was the fact that Pentalpha copied "all but the cosmetic features of SEB's fryer," demonstrating Pentalpha knew it would be causing customers to infringe SEB's patent. *Id.,* at ___ (slip op., at 15).

Accepting the Government and Commil's argument would require this Court to depart from its prior holding.

See *id.,* at \_\_\_ (slip op., at 10). See also *id.,* at \_\_\_ (KENNEDY, J., dissenting) (slip op., at 1) ("The Court is correct, in my view, to conclude that . . . to induce infringement a defendant must know the acts constitute patent infringement" (internal quotation marks omitted)). And the *Global-Tech* rationale is sound. Qualifying or limiting its holding, as the Government and Commil seek to do, would lead to the conclusion, both in inducement and contributory infringement cases, that a person, or entity, could be liable even though he did not know the acts were infringing. In other words, even if the defendant reads the patent's claims differently from the plaintiff, and that reading is reasonable, he would still be liable because he knew the acts might infringe. *Global-Tech* requires more. It requires proof the defendant knew the acts were infringing. And the Court's opinion was clear in rejecting any lesser mental state as the standard. *Id.,* at \_\_\_ (slip op., at 13–14).

## B

The question the Court confronts today concerns whether a defendant's belief regarding patent validity is a defense to a claim of induced infringement. It is not. The scienter element for induced infringement concerns infringement; that is a different issue than validity. Section 271(b) requires that the defendant "actively induce[d] infringement." That language requires intent to "bring about the desired result," which is infringement. *Id.,* at \_\_\_ (slip op., at 4). And because infringement and validity are separate issues under the Act, belief regarding validity cannot negate the scienter required under §271(b).

When infringement is the issue, the validity of the patent is not the question to be confronted. In *Cardinal Chemical Co.* v. *Morton Int'l, Inc.*, 508 U. S. 83 (1993), the Court explained, "A party seeking a declaratory judgment of invalidity presents a claim independent of the patent-

ee's charge of infringement." *Id.,* at 96. It further held noninfringement and invalidity were "alternative grounds" for dismissing the suit. *Id.,* at 98. And in *Deposit Guaranty Nat. Bank* v. *Roper*, 445 U. S. 326 (1980), the Court explained that an accused infringer "may prevail either by successfully attacking the validity of the patent or by successfully defending the charge of infringement." *Id.,* at 334. These explanations are in accord with the long-accepted truth—perhaps the axiom—that infringement and invalidity are separate matters under patent law. See *Pandrol USA, LP* v. *Airboss R. Prods., Inc.*, 320 F. 3d 1354, 1365 (CA Fed. 2003).

Indeed, the issues of infringement and validity appear in separate parts of the Patent Act. Part III of the Act deals with "Patents and Protection of Patent Rights," including the right to be free from infringement. §§251–329. Part II, entitled "Patentability of Inventions and Grants of Patents," defines what constitutes a valid patent. §§100–212. Further, noninfringement and invalidity are listed as two separate defenses, see §§282(b)(1), (2), and defendants are free to raise either or both of them. See *Cardinal*, *supra,* at 98. Were this Court to interpret §271(b) as permitting a defense of belief in invalidity, it would conflate the issues of infringement and validity.

Allowing this new defense would also undermine a presumption that is a "common core of thought and truth" reflected in this Court's precedents for a century. *Radio Corp. of America* v. *Radio Engineering Laboratories, Inc.*, 293 U. S. 1, 8 (1934). Under the Patent Act, and the case law before its passage, a patent is "presumed valid." §282(a); *id.,* at 8. That presumption takes away any need for a plaintiff to prove his patent is valid to bring a claim. But if belief in invalidity were a defense to induced infringement, the force of that presumption would be lessened to a drastic degree, for a defendant could prevail if he proved he reasonably believed the patent was invalid.

That would circumvent the high bar Congress is presumed to have chosen: the clear and convincing standard. See *Microsoft Corp.* v. *i4i Ltd. Partnership*, 564 U. S. \_\_\_, \_\_\_– \_\_\_ (2011) (slip op., at 8–10). Defendants must meet that standard to rebut the presumption of validity. *Ibid.*

To say that an invalid patent cannot be infringed, or that someone cannot be induced to infringe an invalid patent, is in one sense a simple truth, both as a matter of logic and semantics. See *M. Swift & Sons, Inc.* v. *W. H. Coe Mfg. Co.*, 102 F. 2d 391, 396 (CA1 1939). But the questions courts must address when interpreting and implementing the statutory framework require a determination of the procedures and sequences that the parties must follow to prove the act of wrongful inducement and any related issues of patent validity. "Validity and infringement are distinct issues, bearing different burdens, different presumptions, and different evidence." 720 F. 3d, at 1374 (opinion of Newman, J.). To be sure, if at the end of the day, an act that would have been an infringement or an inducement to infringe pertains to a patent that is shown to be invalid, there is no patent to be infringed. But the allocation of the burden to persuade on these questions, and the timing for the presentations of the relevant arguments, are concerns of central relevance to the orderly administration of the patent system.

Invalidity is an affirmative defense that "can preclude enforcement of a patent against otherwise infringing conduct." 6A Chisum on Patents §19.01, p. 19–5 (2015). An accused infringer can, of course, attempt to prove that the patent in suit is invalid; if the patent is indeed invalid, and shown to be so under proper procedures, there is no liability. See *i4i, supra*, at \_\_\_–\_\_\_ (slip op., at 11–12). That is because invalidity is not a defense to infringement, it is a defense to liability. And because of that fact, a belief as to invalidity cannot negate the scienter required for induced infringement.

There are also practical reasons not to create a defense based on a good-faith belief in invalidity. First and foremost, accused inducers who believe a patent is invalid have various proper ways to obtain a ruling to that effect. They can file a declaratory judgment action asking a federal court to declare the patent invalid. See *MedImmune, Inc.* v. *Genentech, Inc.*, 549 U. S. 118, 137 (2007). They can seek *inter partes* review at the Patent Trial and Appeal Board and receive a decision as to validity within 12 to 18 months. See §316. Or they can, as Cisco did here, seek *ex parte* reexamination of the patent by the Patent and Trademark Office. §302. And, of course, any accused infringer who believes the patent in suit is invalid may raise the affirmative defense of invalidity. §282(b)(2). If the defendant is successful, he will be immune from liability.

Creating a defense of belief in invalidity, furthermore, would have negative consequences. It can render litigation more burdensome for everyone involved. Every accused inducer would have an incentive to put forth a theory of invalidity and could likely come up with myriad arguments. See Sloan, Think it is Invalid? A New Defense to Negate Intent for Induced Infringement, 23 Fed. Cir. B. J. 613, 618 (2013). And since "it is often more difficult to determine whether a patent is valid than whether it has been infringed," *Cardinal*, 508 U. S., at 99, accused inducers would likely find it easier to prevail on a defense regarding the belief of invalidity than noninfringement. In addition the need to respond to the defense will increase discovery costs and multiply the issues the jury must resolve. Indeed, the jury would be put to the difficult task of separating the defendant's belief regarding validity from the actual issue of validity.

As a final note, "[o]ur law is . . . no stranger to the possibility that an act may be 'intentional' for purposes of civil liability, even if the actor lacked actual knowledge that

her conduct violated the law." *Jerman* v. *Carlisle, McNellie, Rini, Kramer & Ulrich, L. P. A.*, 559 U. S. 573, 582–583 (2010). Tortious interference with a contract provides an apt example. While the invalidity of a contract is a defense to tortious interference, belief in validity is irrelevant. Restatement (Second) of Torts §766, Comment *i* (1979). See also W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 110 (5th ed. 1984). In a similar way, a trespass "can be committed despite the actor's mistaken belief that she has a legal right to enter the property." *Jerman, supra,* at 583 (citing Restatement (Second) of Torts §164, and Comment *e* (1963–1964)). And of course, "[t]he general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." *Cheek* v. *United States*, 498 U. S. 192, 199 (1991). In the usual case, "I thought it was legal" is no defense. That concept mirrors this Court's holding that belief in invalidity will not negate the scienter required under §271(b).

### III

The Court is well aware that an "industry has developed in which firms use patents not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees." *eBay Inc.* v. *MercExchange, L. L. C.*, 547 U. S. 388, 396 (2006) (KENNEDY, J., concurring). Some companies may use patents as a sword to go after defendants for money, even when their claims are frivolous. This tactic is often pursued through demand letters, which "may be sent very broadly and without prior investigation, may assert vague claims of infringement, and may be designed to obtain payments that are based more on the costs of defending litigation than on the merit of the patent claims." L. Greisman, Prepared Statement of the Federal Trade Commission on Discussion Draft of Patent

Demand Letter Legislation before the Subcommittee on Commerce, Manufacturing, and Trade of the House Committee on Energy and Commerce 2 (2014). This behavior can impose a "harmful tax on innovation." *Ibid.*

No issue of frivolity has been raised by the parties in this case, nor does it arise on the facts presented to this Court. Nonetheless, it is still necessary and proper to stress that district courts have the authority and responsibility to ensure frivolous cases are dissuaded. If frivolous cases are filed in federal court, it is within the power of the court to sanction attorneys for bringing such suits. Fed. Rule Civ. Proc. 11. It is also within the district court's discretion to award attorney's fees to prevailing parties in "exceptional cases." 35 U. S. C. §285; see also *Octane Fitness, LLC* v. *ICON Health & Fitness, Inc.*, 572 U. S. ___, ___–___ (2014) (slip op., at 7–8). These safeguards, combined with the avenues that accused inducers have to obtain rulings on the validity of patents, militate in favor of maintaining the separation expressed throughout the Patent Act between infringement and validity. This dichotomy means that belief in invalidity is no defense to a claim of induced infringement.

The judgment of the United States Court of Appeals for the Federal Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BREYER took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

_____

No. 13–896

_____

## COMMIL USA, LLC, PETITIONER *v.* CISCO SYSTEMS, INC.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

[May 26, 2015]

JUSTICE SCALIA, with whom THE CHIEF JUSTICE joins, dissenting.

I agree with the Court's rejection of the main argument advanced by Commil and the United States, that induced infringement under 35 U. S. C. §271(b) does not "requir[e] knowledge of the infringing nature of the induced acts." Brief for United States as *Amicus Curiae* 9; see also Brief for Petitioner 15–44. I disagree, however, with the Court's holding that good-faith belief in a patent's invalidity is not a defense to induced infringement.

Infringing a patent means invading a patentee's exclusive right to practice his claimed invention. *Crown Die & Tool Co.* v. *Nye Tool & Machine Works*, 261 U. S. 24, 40 (1923) (quoting 3 W. Robinson, Law of Patents §937, pp. 122–123 (1890)). Only valid patents confer this right to exclusivity—invalid patents do not. *FTC* v. *Actavis, Inc.*, 570 U. S. \_\_\_, \_\_\_ (2013) (slip op., at 8). It follows, as night the day, that only valid patents can be infringed. To talk of infringing an invalid patent is to talk nonsense.

Induced infringement, we have said, "requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc.* v. *SEB S. A.*, 563 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 10). Because only valid patents can be infringed, anyone with a good-faith belief in a patent's *in*validity necessarily believes the

patent *cannot* be infringed. And it is impossible for any-one who believes that a patent cannot be infringed to induce actions that he *knows* will infringe it. A good-faith belief that a patent is invalid is therefore a defense to induced infringement of that patent.

The Court makes four arguments in support of the contrary position. None seems to me persuasive. First, it notes that the Patent Act treats infringement and validity as distinct issues. *Ante,* at 9–10. That is true. It is also irrelevant. Saying that infringement cannot exist without a valid patent does not "conflate the issues of infringement and validity," *ante,* at 10, any more than saying that water cannot exist without oxygen "conflates" water and oxygen. Recognizing that infringement requires validity is entirely consistent with the "long-accepted truth . . . that infringe-ment and invalidity are separate matters under patent law." *Ibid.*

The Court next insists that permitting the defense at issue would undermine the statutory presumption of validity. *Ante*, at 10–11. It would do no such thing. By reason of the statutory presumption of validity, §282(a), patents can be held invalid only by "clear and convincing evidence." *Microsoft Corp.* v. *i4i Ltd. Partnership*, 564 U. S. ___, ___ (2011) (slip op., at 1). This presumption is not weakened by treating a good-faith belief in invalidity as a defense to induced infringement. An alleged inducer who succeeds in this defense does not thereby call a pa-tent's validity into question. He merely avoids liability for a third party's infringement of a *valid* patent, in no way undermining that patent's presumed validity.

Next, the Court says that "invalidity is not a defense to infringement, it is a defense to liability." *Ante*, at 11. That is an assertion, not an argument. Again, to infringe a patent is to invade the patentee's right of exclusivity. An invalid patent confers no such right. How is it possible to interfere with rights that do not exist? The Court has

no answer.

That brings me to the Court's weakest argument: that there are "practical reasons not to *create* a defense based on a good-faith belief in invalidity." *Ante*, at 12 (emphasis added); see also *ibid.* ("*Creating* a defense of belief in invalidity, furthermore, would have negative consequences" (emphasis added)). Ours is not a common-law court. *Erie R. Co.* v. *Tompkins*, 304 U. S. 64, 78 (1938). We do not, or at least should not, *create* defenses to statutory liability—and that is not what this dissent purports to do. Our task is to interpret the Patent Act, and to decide whether *it* makes a good-faith belief in a patent's invalidity a defense to induced infringement. Since, as we said in *Global-Tech*, *supra,* the Act makes knowledge of infringement a requirement for induced-infringement liability; and since there can be no infringement (and hence no knowledge of infringement) of an invalid patent; good-faith belief in invalidity is a defense. I may add, however, that if the desirability of the rule we adopt were a proper consideration, it is by no means clear that the Court's holding, which increases the *in terrorem* power of patent trolls, is preferable. The Court seemingly acknowledges that consequence in Part III of its opinion.

For the foregoing reasons, I respectfully dissent.